UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CHRISTY-MAIN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-1338-JDT-WTL |
| | ) | |
| | ) | |
| JAN OUELLETTE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ENTRY ON MOTION TO STAY ALL DEADLINES PENDING TERMINATION OF THE
AUTOMATIC STAY IMPOSED BY BANKRUPTCY[1]**

Plaintiff Christy-Main, Inc. ("Christy-Main"), a Georgia corporation,[2] filed this

action on September 8, 2006, against Defendant Jan Ouellette, an Indiana resident,

seeking damages pursuant to a variety of claims.  Christy-Main sells logoed corporate

apparel and employed Ms. Ouellette's husband, Mike Ouellette, as Vice President of

Sales until May 1, 2006.  Christy-Main seeks to hold Ms. Ouellette responsible for her

role, in collaboration with Mr. Ouellette, in the formation and operation of Image Apparel

Solutions, Inc. ("Image Apparel Solutions"), an Indiana corporation that also sells logoed

corporate apparel.  Prior to initiating this action, Christy-Main had filed suit against both

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

[2]  Georgia is both Christy-Main's state of incorporation and principal place of business.
(Compl. ¶ 1.)

Mr. Ouellette and Image Apparel Solutions in Georgia state court (the "Georgia Litigation"), seeking damages and injunctive relief pursuant to a variety of similar claims. Christy-Main was unsuccessful in attempting to join Ms. Ouellette as a defendant in the Georgia Litigation because the state court lacked jurisdiction over her, and, therefore, Christy-Main brought this federal action in Indiana against Ms. Ouellette. Several months later, on April 3, 2007, both Mr. Ouellette and Image Apparel Solutions filed for bankruptcy in federal court in Indiana (the "Bankruptcy Litigation"), resulting in the automatic stay of the Georgia Litigation pursuant to Section 362 of the Bankruptcy Code. On June 1, 2007, Christy-Main filed motions in the Bankruptcy Court seeking relief from the automatic stay with respect to both Image Apparel Solutions and Mr. Ouellette so that Christy-Main could proceed with the Georgia Litigation. Shortly thereafter, on June 15, 2007, Christy-Main filed a motion seeking a stay of all deadlines in this matter until either relief from the automatic stay is granted or the Bankruptcy Litigation is completed, resulting in termination of the automatic stay. Ms. Ouellette has filed a brief in opposition to this motion, and Christy-Main has filed a reply brief. The motion is therefore ripe for review, and the court now rules as follows.

I.      BACKGROUND

        Ms. Ouellette's husband, Mike Ouellette, was employed by Christy-Main for several years and served as Vice President of Sales immediately prior to the termination of his employment on May 1, 2006. (Pl.'s Br. Supp. Mot. Stay 2.) On April 25, 2000, Mr. Ouellette executed an employment agreement with Christy-Main. (Compl. ¶¶ 7-9.) That agreement included: (1) a non-compete provision prohibiting Mr. Ouellette

from working for one of Christy-Main's competitors in the uniform/garment rental/sales business or soliciting Christy-Main's customers for such a competitor; and (2) a non-disclosure provision prohibiting Mr. Ouellette from disclosing any confidential or proprietary information of Christy-Main.  (*Id.*)  The agreement specified that these restrictions were to be effective both during the course of Mr. Ouellette's employment and for two years following termination of his employment with Christy-Main.  (*Id.*)

On November 22, 2004, Ms. Ouellette incorporated Image Apparel Solutions, Inc. ("Image Apparel Solutions") in Indiana and became President of the corporation. (Pl.'s Br. Supp. Mot. Stay 2; Def.'s Br. Opp'n 1-2.)  Christy-Main asserts that its corporate slogan is also "Image Apparel Solutions," but Ms. Ouellette disputes that assertion.  (Compl. ¶ 1; Answer ¶ 1.)  In both this action and the Georgia Litigation, Christy-Main's claims depend upon its contention that the Ouellettes, in operating Image Apparel Solutions, used Christy-Main's confidential customer list to sell logoed corporate apparel to Christy-Main's customers.  Christy-Main contends that the Ouellettes selected and used the "Image Apparel Solutions" name in order to deceive Christy-Main's customers, leading them to believe that they were still doing business with Christy-Main.  (Pl.s' Br. Supp. Mot. Stay 2.)  For example, Christy-Main contends that Mr. Ouellette deceived customers through the use of an email signature block that read: "Christy & Main Inc.  Image Apparel Solutions, Inc."  (*Id.*)  Christy-Main learned of the Ouellettes' activities regarding Image Apparel Solutions in April 2006, after noticing that Mr. Ouellette's sales were down approximately $173,000 in comparison to April 2005.  (*Id.*)

Shortly thereafter, on April 28, 2006, Christy-Main fired Mr. Ouellette and initiated the Georgia Litigation against him, seeking injunctive relief and damages.  (Pl.'s Br. Supp. Mot. Stay 2; Ex. A Part 1 Supp. Mot. Stay 2.)  Christy-Main then filed an amended complaint on May 26, 2006, adding Image Apparel Solutions and Jan Ouellette as defendants in the Georgia Litigation.  (Pl.'s Br. Supp. Mot. Stay 2; Ex. A Part 2 Supp. Mot. Stay 23-25.)  The amended complaint incorporated all the pending claims against Mr. Ouellette against Image Apparel Solutions and Ms. Ouellette, and also added a claim of fraud against both of the new defendants.  (Ex. A Part 2 Supp. Mot. Stay 25-30.)  Christy-Main's amended complaint also included a corporate veil-piercing claim against Ms. Ouellette, arguing that Image Apparel Solutions was a "mere instrumentality" for the transaction of Ms. Ouellette's affairs and that, therefore, she should be personally liable for the entire amount of Image Apparel Solution's liability to Christy-Main.  (*Id.*)  Image Apparel Solutions remains as a defendant in the Georgia Litigation, but the court lacked personal jurisdiction over Ms. Ouellette, and she declined to consent to jurisdiction; therefore, she is no longer a defendant to that action.  (Pl.'s Br. Supp. Mot. Stay 2; Def.'s Br. Opp'n 2.)

Christy-Main's inability to add Ms. Ouellette as a defendant in the Georgia Litigation did not end Ms. Ouellette's involvement in the litigation arising from the Ouellettes' activities regarding Image Apparel Solutions; Christy-Main opted to pursue its claims against Ms. Ouellette by filing the present action in this court on September 8, 2006.  Christy-Main seeks compensatory damages, punitive damages, and attorneys' fees and litigation expenses from Ms. Ouellette pursuant to claims of tortious

-4-

interference with business relations, misappropriation of trade secrets, money had and received, unjust enrichment, federal unfair competition, common law and statutory unfair competition, deceptive trade practices, and fraud.  (Compl. 1-11.)  In addition, Christy-Main included a corporate veil-piercing claim in the present action, arguing that Ms. Ouellette should be found "individually liable to [Christy-Main] for the entire amount for which Image Apparel Solutions, Inc. is held liable to [Christy-Main]."  (*Id.* ¶ 67.)

In support of its claims, Christy-Main contends that Ms. Ouellette actively participated in the day-to-day operations of Image Apparel Solutions.  For example, in support of its claim for tortious interference with business relations, Christy-Main contends that Ms. Ouellette "participated in the selling of goods through Image Apparel Solutions, Inc. to [Christy-Main's] customers" in an attempt to interfere with Christy-Main's business relations and "with intent to injure [Christy-Main]."  (*Id.* ¶¶ 22-25.)  In support of its claim for misappropriation of trade secrets, Christy-Main contends that Ms. Ouellette is "utilizing and misappropriating" Christy-Main's trade secret information with "reason to know that she had a duty to avoid" such misappropriation.  (*Id.* ¶¶ 32-34.)  Christy-Main similarly alleges, in support of its other claims, that Ms. Ouellette participated in the operations of Image Apparel Solutions, wrongfully deceiving Christy-Main's customers by leading them to believe that they were still doing business with Christy-Main, all to the detriment of Christy-Main.  (*Id.* ¶¶ 36-38, 40-42, 45, 47-49, 51, 55-57, 59, 61.)

Ms. Ouellette offers a markedly different description of her role with Image Apparel Solutions, contending that she was merely a figurehead with little responsibility

-5-

in handling the corporation's affairs.  According to Ms. Ouellette, she did not "actively solicit sales, advertise, sell products, or purchase products on behalf of Image Apparel Solutions."  (Def.'s Br. Opp'n 2.)  She contends that Mr. Ouellette was responsible for managing all of the corporation's operations, and that her activities were limited to her title as President and "an occasional official act such as signing a check on behalf of the company."  (*Id.*)  She points out that, at all times relevant to this action, she was employed as an independent adjuster for a different corporation, and that she never had any contractual relationship with Christy-Main.  (*Id.*)

On November 14, 2006, the Superior Court of Cobb County entered an order granting an interlocutory injunction (the "Interlocutory Injunction") in the Georgia Litigation.  (Ex. B Supp. Pl.'s Mot. Stay.)[3]  The Superior Court ordered Mr. Ouellette and Image Apparel Solutions (the "Georgia Defendants") not to make contact with current or prior customers of Christy-Main for the sale or rental of logoed or embroidered apparel or merchandise.  (*Id.* 12.)  In addition, the court ordered the Georgia Defendants not to disclose Christy-Main's confidential or proprietary information, not to engage in the sale or rental of logoed or embroidered merchandise in the Midwest, and not to deceive customers by implying any affiliation between Christy-Main and Image Apparel Solutions.  (*Id.*)

On January 5, 2007, Ms. Ouellette resigned her position as President of Image Apparel Solutions and sold her entire interest in the corporation to Mr. Ouellette for one

---

[3]  As previously noted, at this stage, Ms. Ouellette was not a party to the Georgia Litigation due to the court's lack of personal jurisdiction over her.

dollar ($1.00).  (Def.'s Br. Opp'n 1; Ex. A Supp. Def.'s Br. Opp'n.)  Approximately three

months later, on April 3, 2007, both Mr. Ouellette and Image Apparel Solutions filed for

bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy

Court, Southern District of Indiana, Indianapolis Division.  (Pl.'s Br. Supp. Mot. Stay 3.)

The Georgia Litigation was then automatically stayed pursuant to Section 362 of the

Bankruptcy Code.  (*Id.*)  On June 1, 2007, Christy-Main filed motions in the Bankruptcy

Court seeking relief from the automatic stay in two respects: (1) to permit Christy-Main

to proceed with the Georgia Litigation with regard to Image Apparel Solutions "in all

respects except the collection of any monetary judgment obtained"; and (2) to permit

Christy-Main to enforce the Interlocutory Injunction against Mr. Ouellette and seek other

final injunctive relief.[4]  (*Id.* 3-4.)

Shortly thereafter, on June 15, 2007, Christy-Main filed the motion presently

under consideration, seeking to stay all deadlines in this matter either until the

Bankruptcy Court grants relief from the automatic stay or until the Bankruptcy Litigation

is completed, resulting in the termination of the automatic stay.  (Pl.'s Br. Supp. Mot.

Stay 8.)  Christy-Main argues that a stay should be granted under the *Colorado River*

doctrine, which allows a district court, in exceptional circumstances, to stay or dismiss

federal proceedings pending the resolution of parallel state litigation.  Christy-Main

---

[4]  The court takes notice of the fact that Christy-Main's motion for relief from the
automatic stay was granted with respect to Image Apparel Solutions by the bankruptcy court on
July 26, 2007.  In addition, the court takes notice of the fact that Christy-Main's motion for relief
from the automatic stay with respect to Mr. Ouellette was granted by the bankruptcy court on
September 10, 2007.  Because Christy-Main sought a stay of the present proceedings only until
it obtained relief from the automatic stay, this provides an alternative ground for denying the
motion under consideration.

argues that granting such a stay would serve to conserve judicial resources, avoid piecemeal litigation, and ensure that neither party gains an unfair litigation advantage as a result of the Bankruptcy Litigation.  (Pl.'s Br. Supp. Mot. Stay 7-8.)  Ms. Ouellette opposes the motion for a stay, arguing that the Georgia Litigation does not qualify as a "parallel" action, and that even if the two proceedings were parallel, the *Colorado River* discretionary factors would still weigh against a stay.  (Def.'s Br. Opp'n 5, 9.)  These arguments are addressed below.

## II.    DISCUSSION

Although Christy-Main requests a stay of the present action only until it obtains relief from the automatic stay in the Bankruptcy Litigation, Christy-Main argues in its brief that the Georgia Litigation is the parallel action to which this court should defer under the *Colorado River* doctrine.  Ms. Ouellette also argues against abstention with reference only to the Georgia Litigation, rather than the Bankruptcy Litigation.  For this reason, and because it is clear that the Bankruptcy Litigation could not constitute a "parallel" action under the *Colorado River* doctrine, this court will address Christy-Main's arguments for abstention with regard to the Georgia Litigation.

In general, the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and ordinarily, there is no bar to contemporaneous, parallel litigation concerning the same matter in both state and federal court.  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  However, under exceptional circumstances involving concurrent federal-state

proceedings, a federal court may stay or dismiss a suit "as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 517 (7th Cir. 2001) (quoting *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.*, 180 F.3d 896, 898 (7th Cir. 1999)) (internal quotations omitted); *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). Nevertheless, because of the "heavy obligation" of the federal courts to exercise jurisdiction, a district court should not seek "to find some substantial reason for the *exercise* of federal jurisdiction," but should instead ask whether "the clearest of justifications" exist "to justify the *surrender* of that jurisdiction." *AAR Int'l,* 250 F.3d at 517-18 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (emphasis in original) (internal quotations omitted).

Under *Colorado River*, a district court should follow a two-step process to determine whether abstention is appropriate. First, the court must determine whether the "concurrent state and federal proceedings are parallel." *Caminiti*, 962 F.2d at 700. If the state and federal actions are not parallel, then *Colorado River* doctrine is inapplicable. *AAR Int'l*, 250 F.3d at 518. However, if the state and federal actions are parallel, then the court should "balance the considerations that weigh in favor of, and against, abstention, bearing in mind the exceptional nature of the measure." *Finova Capital*, 180 F.3d 896, 898. These considerations include:

> (1) the identity of the court that first assumed jurisdiction over the property;
> (2) the relative inconvenience of the federal forum; (3) the need to avoid
> piecemeal litigation; (4) the order in which the respective proceedings
> were filed; (5) whether federal or [state] law provides the rule of decision;

> (6) whether the [state] action protects the federal plaintiff's rights; (7) the relative progress of the federal and [state] proceedings; and (8) the vexatious or contrived nature of the federal claim.

*Id.* (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone*, 460 U.S. at 23, 26).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Caminiti*, 962 F.2d at 701 (quoting *Colorado River*, 424 U.S. at 818-19).

State and federal actions need not involve identical parties and claims to be considered "parallel."  *AAR Int'l*, 250 F.3d at 518.  Rather, a state action is "parallel" to a federal action where "substantially the same parties are litigating substantially the same issues simultaneously" in both fora.  *Finova Capital*, 180 F.3d at 898 (quoting *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1156 (7th Cir. 1990)) (internal quotations omitted).  This means that formal symmetry between the two actions is not required, and that "the mere presence of additional parties or issues in one of the cases will not necessarily preclude a finding that they are parallel."  *AAR Int'l*, 250 F.3d at 518 (citing *Caminiti*, 962 F.2d at 700-01).

Although the two actions need not be identical to be considered parallel, they are only sufficiently similar to be considered parallel if "there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case."  *Id.* (quoting *Day v. Union Mines, Inc.*, 862 F.2d 652, 656 (7th Cir. 1988)) (internal quotations omitted); *see also Finova Capital*, 180 F.3d at 898 (concluding suits were parallel because "the granting of relief in one forum would dispose of the claims raised in the

other"); *Caminiti*, 962 F.2d at 701 (concluding suits were parallel despite slight difference in parties and issues because the granting of relief requested in the state probate court "would dispose of all claims raised in the federal case"); *cf. Schneider*, 903 F.2d 1154, 1156-57 (concluding that suits were parallel where the central issue to be resolved in both suits was identical, leaving "no difference whatever" between the two actions as between the federal litigants). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses," *Moses H. Cone*, 460 U.S. at 28; therefore, if there is "any substantial doubt that the [state] litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," then it would be a "serious abuse of discretion to abstain under *Colorado River*." *AAR Int'l*, 250 F.3d at 518, 520 (quoting *Moses H. Cone*, 460 U.S. at 28) (internal quotations omitted). Further, any doubt regarding whether the state and federal actions are parallel "should be resolved in favor of exercising jurisdiction." *AAR Int'l*, 250 F.3d at 520 (citing *Allen v. Bd. of Educ. Unified Sch. Dist. 436*, 68 F.3d 401, 403 (10th Cir. 1995)).

Christy-Main correctly points out that two actions need not involve identical parties and claims to be considered parallel, and Christy-Main argues that the Georgia Litigation is parallel to the present action because substantially similar parties are contemporaneously litigating substantially similar claims in both actions. Christy-Main reasons that all the claims in the present suit against Ms. Ouellete are also present in the Georgia Litigation, that the two cases arise from a common nucleus of fact, and that

-11-

the parties to the Georgia Litigation share nearly identical interests to those of Ms.

Ouellette in the outcome of that litigation.  (Pl.'s Reply Br. Supp. Mot. Stay 2-5.)

However, Christy-Main conspicuously fails to argue that the Georgia Litigation is

likely to dispose of all claims in the present action.  The absence of that argument is not

altogether surprising, because at least one claim in this action, the corporate veil-

piercing claim, cannot be resolved in the Georgia Litigation due to Ms. Ouellette's

absence from that lawsuit.  Indeed, Christy-Main brought this federal action, seeking to

hold Ms. Ouellette personally liable for any liability imposed on Image Apparel Solutions

in the Georgia Litigation, precisely because it could not pursue that claim (or its other

claims against Ms. Ouellette) in the Georgia Litigation.  As Christy-Main points out, the

"crux" of its federal lawsuit is its claim that "Jan Ouellette and Image Apparel Solutions,

Inc. are so intimately intertwined that this Court should pierce the corporate veil."  (Pl.'s

Br. Supp. Mot. Stay 6.)

Christy-Main correctly points out that if the Georgia Litigation does not produce a

monetary judgment against Image Apparel Solutions, the veil-piercing claim in this

action will be moot.  However, this is not sufficient for *Colorado River* abstention; in

order to abstain under this doctrine, the district court must not harbor "any substantial

doubt" that the state litigation will dispose of all federal claims, regardless of which party

prevails.  *Moses H. Cone*, 460 U.S. at 28 (noting that "the decision to invoke *Colorado*

*River* necessarily contemplates that the federal court will have nothing further to do in

resolving any substantive part of the case").  The cases cited by Christy-Main in support

of its parallelism argument are consistent with this requirement.  *See Caminiti*, 962 F.2d

-12-

at 701 (concluding that suits were parallel where the "basic issue" to be decided in both actions was identical and the granting of relief in the state forum would "dispose of all claims raised in the federal case"); *Schneider*, 903 F.2d at 1156 (concluding that suits were parallel where both federal litigants were present in the state court action and, as between the federal litigants, there was "no difference whatever between the federal suit and the later state court action"); *Day*, 862 F.2d at 656-57 (concluding that suits were parallel where both parties to the federal action were present in the state action and the federal issue would "almost inevitably be resolved" in the state action, regardless of which party prevailed); *see also Lumen*, 780 F.2d at 695-96 (concluding that actions were parallel because "one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court"). At this point, particularly in light of the Superior Court's Interlocutory Injunction against Mr. Ouellette and Image Apparel Solutions, there is "substantial doubt" that the Georgia Litigation will render the corporate veil-piercing claim moot; indeed, at this point, it seems more likely that the Georgia Litigation's outcome will necessitate further proceedings on the corporate veil-piercing claim in this court.

However, even if this court harbored no substantial doubt that the Georgia Litigation would dispose of the corporate veil-piercing claim, there would still remain substantial doubt whether that litigation would dispose of the other claims against Ms. Ouellette in this action.  The remaining claims (tortious interference with business relations, misappropriation of trade secrets, money had and received, unjust enrichment, federal unfair competition, common law and statutory unfair competition,

deceptive trade practices, and fraud) seek to hold Ms. Ouellette personally liable for her participation in the operation of Image Apparel Solutions.  These claims are not derivative of any claims against Mr. Ouellette and Image Apparel Solutions, but instead seek to hold Ms. Ouellette liable for her own actions.  Given Ms. Ouellette's absence from the Georgia Litigation, it is difficult to see how that litigation would be likely to dispose of these claims.

Because it seems unlikely that the Georgia Litigation will dispose of all of Christy-Main's federal claims against Ms. Ouellette, the Georgia Litigation cannot be considered "parallel" to the present action under the *Colorado River* doctrine.  For this court to hold otherwise would constitute a "serious abuse of discretion."  *See AAR Int'l*, 250 F.3d at 520 (reversing the district court's decision to abstain where it was not "substantially likely" that the foreign action would dispose of a lease provision interpretation issue in the federal action).  Because the two actions are not parallel, this court cannot abstain under *Colorado River*, and it is therefore not necessary to weigh that doctrine's discretionary factors.

**III.     CONCLUSION**

For the reasons stated above, the Motion to Stay Pending Termination of the

Automatic Stay Imposed by Bankruptcy (Docket No. 30) is **DENIED**.

ALL OF WHICH IS ENTERED this 6th day of November 2007.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Magistrate Judge William T. Lawrence

David J. Carr
ICE MILLER LLP
carr@icemiller.com

Erin A. Clancy
KIGHTLINGER & GRAY
eclancy@k-glaw.com

Paul C. Sweeney
ICE MILLER LLP
paul.sweeney@icemiller.com

Margaret Dewey Wielenberg
ICE MILLER LLP
margaret.wielenberg@icemiller.com